**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

SANTANA-COLÓN, <u>et al.</u>,

    **Plaintiffs,**

    **v.**

**HOUGHTON MIFFLIN HARCOUT**
**PUBLISHING COMPANY, <u>et al.</u>,**

    **Defendants.**

**CIVIL NO. 13-1053 (PAD)**

## OPINION AND ORDER

Plaintiffs José Santana-Colón, his wife Iris Vizcarrondo, and the conjugal partnership between them initiated this action against defendant Houghton Mifflin Harcourt Publishing Company, claiming defendant violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*; Puerto Rico Law No. 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29 §§ 185a *et seq.*; and Puerto Rico Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29 §§ 194 *et seq.* In addition, they have alleged Houghton owes commissions to Santana, and is liable for damages under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141 and § 5142. Jurisdiction has been predicated on 28 U.S.C. § 1331, § 1332, and § 1367.

Before the Court is defendant's "Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted" (Docket No. 18). For the reasons explained below, the motion is GRANTED IN PART AND DENIED IN PART.

## I.    <u>BACKGROUND</u>

Santana was employed with defendant as an Associate Sales Representative. At some point, he began to experience medical problems resulting from stress and physical wear. In December

2010 he fell ill at work, and was taken to a hospital emergency room.  In February 2011, he was hospitalized.  On August 11, 2011, he sought treatment with the Corporation of the State Insurance Fund of Puerto Rico ("SIF").[1]

Initially, the SIF ordered Santana to rest, but in October 2011 released him to work, finding that his condition was not work related.  Given that Santana was in no condition to work, he filled out FMLA paperwork.  Defendant designated the leave as FMLA leave to run concurrently with the SIF (worker's compensation) leave.  In February 2012, it terminated Santana's employment in what plaintiffs have characterized as a pretextual downsizing.

After plaintiffs initiated the action, defendant moved to dismiss (Docket No. 11), plaintiffs submitted an amended complaint (Docket No. 17), defendant filed a second motion to dismiss (Docket No. 18), plaintiffs opposed the motion, (Docket No. 19), defendant replied (Docket No. 24, and plaintiffs sur-replied (Docket No. 27).  Defendant contends all claims should be dismissed under Fed. R. Civ. P. 12(b)(6).

### III.    STANDARD OF REVIEW

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must allege a plausible entitlement to relief.  Rodríguez-Vives v. Puerto Rico Firefighters Corps., 743 F.3d 278, 283 (1st Cir. 2014); Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013); Rodríguez-Ortiz v. Margo Caribe, 490 F.3d 92, 95 (1st Cir. 2007).

Plausibility involves a context-specific task calling on courts to examine the complaint as a whole, separating factual allegations (which must be accepted as true) from conclusory allegations (which need not be credited).  García-Catalán v. United States, 734 F.3d 100, 103 (1st

---

[1] The SIF administers mandatory workers' compensation insurance in Puerto Rico.  See, P.R. Laws Ann. tit. 11 § 19.

Cir. 2013); Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012). While detailed factual allegations are not required, more than labels and conclusions are needed. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

Bare bones recitals of the elements of a cause of action will not do. Mead v. Independence Ass'n, 684 F.3d. 226, 231 (1st Cir. 2012). Unadorned factual assertions as to those elements are inadequate as well. Peñalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 596 (1st Cir. 2011). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – that the pleader is entitled to relief. Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009).

## III. DISCUSSION

### A. Family and Medical Leave Act

Plaintiffs claim defendant knowingly and willfully violated the FMLA by discriminating against Santana and terminating his employment in retaliation for having taken a protected leave (Docket No. 17 at ¶¶ 58-59). Defendant counters plaintiffs failed to allege facts necessary to show Santana was an eligible employee under the FMLA, or that he was discriminated or retaliated against for taking FMLA leave (Docket No. 18 at p. 8).

The FMLA was enacted to help working women and men balance the competing demands of work and personal life. It contains two relatively distinct types of provisions: prescriptive and proscriptive. The former create substantive rights, whereas the latter provide protection for the exercise or the attempt to exercise those rights. Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005). The provisions create two distinct causes of action, to which courts apply different analyses. Id. at 331.

As to substantive rights, the FMLA entitles eligible employees of covered employers to, *inter alia*, take 12 weeks of leave during any 12-month period for a variety of reasons, and with limited exceptions, to be reinstated to the same position or an alternative position with equivalent pay, benefits, and working conditions, without loss of accrued seniority.  Id. at 330.

To ensure these entitlements, the FMLA makes it unlawful for the employer to interfere with, restrain, or deny the exercise of rights under the statute.  In such instances, the key issue is whether the employer provided the employee the benefits to which he was entitled under the FMLA.  In turn, the FMLA's proscriptive provisions protect the entitlements by prohibiting the employer from retaliating or discriminating against employees who have exercised or attempted to exercise rights created by the FMLA.  Id. at 331-332.

The FMLA does not cover every employer and employee.  To be considered eligible for statutory protection, the employee must have worked for a covered employer (1) for at least 12 months, (2) not less than 1,250 hours during the 12-month period immediately preceding the date the leave is taken; and (3) at a worksite where the employer employs at least 50 employees within 75 miles as of the date that notice of the need for leave was provided.  29 U.S.C. § 2611(2)(A) and § 2611 (2)(B)(ii); McArdle v. Town of Dracut/Dracut Public Schools, 732 F.3d 29, 33 (1st Cir. 2013).

In their application, these requirements define and limit the class of employees entitled to claim statutory relief.  For the same reason, an interference claim brought by an ineligible employee fails.  See, Rodríguez v. JSPLTC, LLC, 2013 WL 1791145, *2-3 (D.N.J. April 25, 2013)(dismissing interference action due to plaintiff's failure to plead sufficient factual matter to plausibly infer she was an eligible employee under the FMLA).  See also, Walker v. Trinity Marine

Products, Inc., 721 F.3d 542, 544-545 (8th Cir. 2013); Basden v. Professional Transp., Inc., 714 F.3d 1034, 1039 (7th Cir. 2013)(summary judgment dismissing interference claim with FMLA rights, since by having been employed less than twelve months, plaintiff was not eligible for statutory protection).

A number of courts have subjected retaliation and discrimination actions to similar constraints. See, Humenny v. Genex Corp., 390 F.3d 901, 905-906 (6th Cir. 2004)(to state a claim for retaliation, plaintiff must qualify as an eligible employee under FMLA); Walker v. Elmore County Bd. of Educ., 379 F.3d 1249, 1254 (11th Cir. 2004)(eligibility a prerequisite for retaliation claim); McSweeney v. Dinner's Served, Inc., 2010 WL 4853801, at *2-3 (S.D. Texas Nov. 22, 2010)(dismissing FMLA discrimination claim since based on the pleadings, plaintiff was not an eligible employee). See also, Goode v. Heritage Hospice, Inc., 2012 WL 1038669, at *2-3 (E.D. Ky. March 26, 2012)(dismissing interference and retaliation claims under Fed. R. Civ. P. 56 because plaintiff was not an eligible employee covered by FMLA).

The First Circuit has expressed reservations on whether an employee who is ineligible for FMLA leave could never bring a retaliation claim, because that would mean such an employee could be fired for asking if he was eligible for FMLA leave. McArdle, 732 F.3d at 35. Nevertheless, it has recognized that an employee could not successfully argue to have been discharged for taking leave if such leave was not a right protected by the FMLA. Id.; see also, Carrero-Ojeda v. Autoridad de Energía Eléctrica, 755 F.3d 711, 719 (1st Cir. 2014)(pointing out that to make out a prima facie case of FMLA retaliation, an employee must show that he availed himself of a protected FMLA right); Orta-Castro v. Merck, Sharp & Dohme, 447 F. 3d 105, 114 (1st Cir. 2006)(same).

Santana-Colón v. Houghton Mifflin Harcout Publishing Company
Civil No. 13-1053 (PAD)
Opinion and Order
Page 6

With these formulations, it is apparent that compliance with the FMLA's eligibility requirements conditions the viability of FMLA interference claims, and of discrimination and retaliation actions brought by employees who have taken leaves of absence. Consequently, to withstand dismissal, the pleadings must contain sufficient factual allegations to reasonably infer a plaintiff's status as an eligible employee within the meaning of the FMLA.

A careful review of the amended complaint shows plaintiffs have not pled sufficient facts to reasonably infer (1) that Santana worked for defendant at least 1,250 hours during the 12-month period preceding the August 2011 leave, or (2) that defendant employed at least 50 employees within 75 miles of Santana's workplace when it received notice of the employee's need for leave that year. Given that, as discussed, lack of eligibility is fatal to recovery, the allegations do not sustain viable FMLA claims. See, McArdle, 732 F.3d at 35 (employee ineligible for FMLA leave cannot be said to have been fired in retaliation for taking a leave "protected under the FMLA").

Plaintiffs counter that defendant's grant of FMLA leave to Santana carried within it the admission that Santana met all of the pre-requirements of the Act (Docket No. 19 at p. 4). Statutory benefits are predicated upon compliance with statutory eligibility requirements. To the extent the allegations do not show Santana met those requirements, plaintiffs have not pled plausible FMLA claims.

Plaintiffs may be suggesting – without so stating – that defendant should be estopped from challenging Santana's eligibility. To make out a viable estoppel claim, plaintiff must have reasonably relied on the defendant's misrepresentations to his detriment. McCardle, 732 F.3d at 35. From that perspective, plaintiffs argue that Santana (1) was under the impression that he was "still on FMLA leave" when his employment terminated in February 2011; and (2) had not been

informed that he was going to be terminated if he did not report to work after exhausting FMLA leave (Docket No. 19 at p. 7).

Following the progression of plaintiffs' argument, its core premise is incorrect, because (as discussed), from the pleadings it cannot be reasonably inferred that Santana was on a leave protected by the FMLA. Yet such leave lasts 12 weeks. Beginning on August 11, 2011, it would have ended by November 9, 2011. In this sense, the allegations contain no misrepresentations attributed to the defendant as to the leave's length.

Likewise, not knowing that termination may occur after exhaustion of a leave of absence might have worked as part of a viable estoppel argument, if the defendant had told Santana the opposite of what plaintiffs assert; that is, that he would not be so discharged. However, there are no factual allegations that the employer guaranteed Santana more leave than the twelve weeks he would have been entitled to if he had been eligible for the FMLA leave. Without that foundation, the pleadings do not reflect any reliance, much less detrimental reliance upon a misrepresentation which should prevent defendant from raising Santana's ineligibility to assert FMLA claims. See, Hill v. Walker, 737 F.3d 1209, 1215 (8th Cir. 2013)(noting absence of explicit leave-extension guarantee in rejecting employee's estoppel claim under the FMLA).

On a different level, even if plaintiffs had pled enough facts to reasonably infer Santana's eligibility – and they did not – their allegations would be insufficient to raise an interference or a retaliation claim under the FMLA.[2] From the pleadings, by the end of 2011 Santana had used

---

[2] In the amended complaint, plaintiffs claim defendant retaliated against Santana for terminating his employment when he was on leave (Docket No. 17 at ¶ 58). In the Sur-reply, however, they seem to suggest that defendant also interfered with Santana's FMLA rights (Docket No. 27 at pp. 6-7). They argue that all statutory or regulatory violations constitute interference with rights provided by the FMLA (Id.). Their position is contrary to first circuit precedent, which distinguishes the FMLA's prescriptive provisions from its proscriptive ones. See, Mellen v. Trustees, 504 F. 3d 21, 26 (1st Cir. 2007)(so recognizing). Accordingly, the First Circuit has held that whatever label a claim is given, at bottom,

Santana-Colón v. Houghton Mifflin Harcout Publishing Company
Civil No. 13-1053 (PAD)
Opinion and Order
Page 8

more than 12 weeks of leave from the point he reported to the SIF in August 2011.  But they are silent on whether he was able to return to work after that twelve-week period.  On this ground, the amended complaint does not provide enough factual material to infer defendant interfered with Santana's right to take leave, or to be reinstated upon completion of that leave.  See, Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2012) (no entitlement to relief to employee who used more than the 12-week leave guaranteed by FMLA); Bellone v. Southwick-Tolland Regional School Dist., 748 F.3d 418, 424-425 (1st Cir. 2014)(no right to reinstatement where employee was not able to return to work after expiration of leave).

Along the same line, plaintiffs' allegation that defendant violated the FMLA in terminating Santana's employment while he was on leave "enjoying FMLA benefits," as retaliation for having taken such "law-protected leave" (Docket No. 17 at ¶¶ 6, 53, 56, 58), fails.  The pleadings show Santana was discharged approximately 6 months after he began to take the leave of absence.  As such, the asserted sequence does not reach the threshold required to sustain a finding of retaliatory discharge.  See, McArdle, 732 F.3d at 337-338 (no inference of retaliatory motive when employee began to take leave in October and was not terminated until almost four months later).

Similarly, the amended complaint contains no statement attributed to any individual identified as a decision maker which would reasonably reflect retaliatory motive.  The only allegation conceivably serving hat purpose is the assertion that when Santana went out on leave, supervisor sent him an email stating "bad for you that you got sick again." (Docket No. 17 at ¶

what matters is whether the plaintiff is claiming that the employer denied her substantive rights or the employer retaliated against her for having exercised those rights.  Id. at 26-27.  In the present case, the pleadings lead to a retaliation rather than to an interference claim.  Notwithstanding this problem, the Court will assume, arguendo, that plaintiffs properly included in their pleadings an action for alleged interference with Santana's rights under the FMLA.

49).[3]  More is needed to state a plausible retaliation claim.  See, Demyanovich v. Cadon Plating & Coatings, LLC, 747 F.3d 419, 432 (6th Cir. 2014)(referring to plaintiff as a "liability" immediately after he requested FMLA leave);   Lundy v. Park Nicollet Clinic, 2014 WL 3573626, *7 (D. Minnesota July 21, 2014)(when plaintiff presented FMLA paperwork to supervisor, the supervisor became noticeably frustrated, grabbed the paperwork from plaintiff's hands, said "I can't believe this," rolled her eyes, and then said "I do not have enough employees"); Hodgens v. General Dynamics Corp., 144 F.3d 151, 165 (1st Cir. 1998)(supervisor warned plaintiff "he was taking too much time off" shortly after he took leave; the performance evaluation "advised him to make every effort to have his absenteeism fall within company guidelines;" and employer decided which employees to lay off based on a ranking that considered plaintiff's absence rate).

By contrast, the email here is unexceptional.  It did not cross a prohibited line to cloud the employment relationship with retaliatory animus.  See, Breneisen v. Motorola, 512 F. 3d 972, 982 (7th Cir. 2008)(that supervisor once introduced plaintiff by saying, "this is [plaintiff], your probably haven't met her yet because she is never here," does not support FMLA retaliation claim); Congleton v. Weil, 2003 WL 22100877, at * 6 (E.D. Pa., Aug. 19, 2003)(in context of Americans with Disabilities Act, a supervisor's expressing concern for employee's health is not sufficient to impose liability).[4]

---

[3] According to the amended complaint, the email reads "que mal que te enfermaste otra vez" (Docket No. 17 at ¶ 49). A more accurate translation than the one plaintiffs proffered would be, "it is bad that you got sick again." Be that as it may, the Court will rely on plaintiffs' own translation.

[4] Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state claims when the federal claims that gave it original jurisdiction are dismissed, 28 U.S.C. § 1367C(3). Thus, at this point the Court would ordinarily have dismissed plaintiffs' state claims without prejudice. Lares Group II v. Tobin, 221 F. 3d 41, 45 (1st Cir. 2000); Boche v. John Hancock Mut. Life Ins.Co., 81 F.3d 249, 256-257 (1st Cir. 1996); Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). Because plaintiffs invoked not only federal and supplementary jurisdiction, but also diversity-of-citizenship jurisdiction, which defendant has not challenged, the Court will evaluate the state claims as well.

### B.  Law 115

Plaintiffs allege Santana was retaliated against in violation of Law 115 (Docket No. 17 at ¶¶ 63-66).  In general, this statute makes it unlawful for the employer to discharge, threaten or discriminate against an employee regarding terms, conditions, compensation, location, benefits or privileges of employment should the employee offer or attempt to offer any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico.  See, P.R. Laws Ann. tit. 29 § 194(a).

In Feliciano-Martes v. Sheraton, 182 D.P.R. 368, 395-396 (2011), the Puerto Rico Supreme Court interpreted this provision adopting the prima facie framework utilized to evaluate cases under Section 704(a) of Title VII of the Civil Rights Act of 194, 42 U.S.C. § 2000e-3(a).  On this view, to adequately plead a claim under Law 115 the employee must allege facts sufficient to reasonably infer (1) participation in activity protected by Sections 194(a) *et seq*., (2) a materially adverse employment action, and (3) a causal connection between the protected activity and the adverse action.  Even though a plaintiff need not plead facts to establish a *prima facie* case at the pleading stage, the elements of a prima facie case are useful as a prism to shed light upon the plausibility of a plaintiff's claim.  Carrero-Ojeda, 755 F. 3d at 719.

Plaintiffs allege Santana was discharged in retaliation (1) for having refused to follow the Company's instructions to commit illegal acts, (2) for having availed himself of the protections of the FMLA, and (3) for having sought treatment with the SIF (Docket No. 17 at ¶ 66).  Defendant contends plaintiffs' allegations are insufficient to withstand dismissal under Fed. R. Civ. P. 12(b)(6).

Since Santana was discharged, it is apparent he was subjected to an adverse employment action.  That he refused to follow instructions from the employer to engage in an illegality or applied for FMLA leave, however, are of no moment: Law 115 only covers employees who have testified or attempted to testify before an administrative, legislative or judicial body.  Villanueva-Batista v. Doral Financial, 2009 WL 4936396, at *306 (1st Cir. Dec. 23, 2009); Pabón-Ramírez v. MMM, 2013 WL 1797041, at *9 (D.P.R. April 29, 2013); Feliciano Martes, 182 D.P.R. at 393.  At the same time, the Puerto Rico Supreme Court has held that seeking SIF benefits qualifies as protected activity under Law 115.  Feliciano Martes, 182 D.P.R. at 395.  Hence, the Court focuses on whether the allegations support the existence of a causal relationship between Santana's SIF leave and his dismissal.

Very close temporal proximity between protected activity and a materially adverse action may give rise to an inference of causation.  Sánchez-Rodríguez v. AT&T Mobility Puerto Rico, Inc., 673 F.3d 1, 15 (1st Cir. 2012).  To that end, the First Circuit in Sánchez accepted a span of three (3) months between the filing of an EEOC complaint and an employer's disciplinary action to be of sufficient temporal proximity to satisfy the plaintiff's burden of showing a causal connection.  Id.  Likewise, in Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004), it held that a span of one (1) month was sufficient, but also noted that "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity."  On this basis, the allegations do not support the claim.

According to the amended complaint, Santana sought SIF benefits on August 11, 2011.  He never returned to work and was discharged approximately 6 months later, on February 15, 2012 (Docket No. 17 at ¶¶ 48, 52, 54).  Those allegations do not sustain a causal connection between

Santana-Colón v. Houghton Mifflin Harcout Publishing Company
Civil No. 13-1053 (PAD)
Opinion and Order
Page 12

the protected activity and the adverse employment action.  See, Colburn, 429 F.3d at 337-338 (retaliation claim dismissed in case where plaintiff began to take leave in October 2001, and was not terminated until almost four months later).

The conclusion does not change aggregating allegations (1) that when Santana became ill and sought treatment with the SIF, his supervisor sent an email to him stating that it was bad for him that he was sick again; (2) the defendant did not recognize the leave of absence as an SIF leave; and (3) that the employer asked Santana while on leave to return the company car and computer (Docket No. 17 at ¶¶ 49, 50, 56).  Viewed as a whole, these allegations are insufficient to resist dismissal.

The comment is no more than an unexceptional remark.  See, Breneisen, 512 F. 3d at 982. As for defendant's not recognizing the leave as an SIF leave, plaintiffs themselves have acknowledged that the SIF closed Santana's case (Docket No. 17 at ¶ 52).  Along the same line, Santana was in no condition to return to work.  Id. at ¶¶ 52-53.  As plaintiffs themselves asserted, the computer and phone are company property assigned to all sales representatives to perform their duties (Docket No. 17 at ¶ 50).  There is nothing inappropriate with asking employees on leave to return company car and other work-related equipment, inventory and documents.  Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 46 (1st Cir. 2003).[5]  Examining the allegations in their entirety, plaintiffs have not raised a plausible claim for relief under Law No. 115. Correspondingly, the claim must be dismissed.

---

[5] The same reasoning would lead to the same result in the context of the FMLA, to require the dismissal of plaintiffs' retaliation claim under the federal statute.

### C. Commissions

Plaintiffs allege defendant owes Santana $192,000.00 in commissions corresponding to 2011 and 2012. They allege Santana was compensated on the basis of a biweekly salary of $961.54 ($25,000.00 annualized) (Id. at ¶ 26); that effective March 8, 2010, he was eligible to participate in the Associates Sales Representative Commission Plan (Id. at ¶ 73); that for the period of 2010 he received approximately $38,500.00 under the commission plan (Id. at ¶ 74); but that defendant failed to pay him commissions for 2011 and 2012, for a total owed of $192,000.00 (Id. at ¶ 75).

Defendant points out that plaintiffs failed to provide enough factual support regarding prerequisites for entitlement to benefits under the plan; Santana's alleged eligibility to participate in the plan; sales volume in the years for which commissions are claimed; or for the conclusion that Santana is owed $192,000.00 in commissions for 2011 and 2012 when by plaintiffs' admission Santana did not work a single day in 2012 (Docket No. 18 at p. 17).

Since the employer-employee relationship is, at heart, a contractual one, the sufficiency of allegations of entitlement to employment-related benefits has been tested under a contract model. In Manning v. Boston Medical Center Corp., 725 F.3d 34, 57 (1st Cir. 2013), the First Circuit held that an allegation that plaintiffs would provide their labor and services in a specified role for defendants in exchange for an agreed upon hourly pay rate, coupled with allegations that through timekeeping and payroll policies detailed in the complaint plaintiffs relied, to their detriment, on defendants' promises to pay all the wages owed, was sufficient to state a breach of contract claim. The court noted that while the factual allegations were relatively simple, so were the elements of a claim sounding in contract. Thus the court saw "no need to demand more specificity when the core assertion is obvious enough." Id.

By contrast, in Doyle v. Habro, 103 F.3d 186, 195 (1st Cir. 1996), the First Circuit held that the allegation that "[defendant] and its executives failed to meet their contractual requirement" was insufficient to state a claim. The court observed that the amended complaint had failed to state the nature of the alleged contract with any specificity, since among other things, there was no presentation of the terms of the contract or its duration, nor explained what obligations were imposed.

In light of these authorities, the Court must conclude that plaintiffs have not provided a necessary factual predicate showing more than a possible entitlement to relief. They have essentially alleged there was a commission plan for which Santana was eligible, and that he received commissions in 2010, but not in 2011 and 2012. Yet they have not put forward allegations regarding criteria on eligibility for commissions related to each of the years for which commissions are claimed, which, at a minimum, would explain what specific obligations the defendant was subjected to, and therefore, under what conditions payment is due. All said, a critical element of the claim – the condition precedent to payment – is lacking.

A condition precedent defines an event which must occur before an obligation to perform arises under a contract. Sands v. Ridefilm Corp., 212 F.3d 657, 661-662 (1st Cir. 2000). If the condition is not fulfilled, the contract or the obligations attached to the condition may not be enforced. Id. The contingency gives rise to the claim, and makes it necessary to be included as an element of the action to explain its viability. For this reason, the allegation requires more than a label, a conclusion, or a formulaic recitation of the elements of a cause of action. In its application, it produces factual material allowing reason to surpass speculation to support a legitimate inference of entitlement to relief.

Santana-Colón v. Houghton Mifflin Harcourt Publishing Company
Civil No. 13-1053 (PAD)
Opinion and Order
Page 15

In this connection, compare Williams v. Astra USA, Inc., 68 F.Supp.2d 29, 37 (D. Mass. 1999)(dismissal on the pleadings of contract claim brought by plaintiff who did not state what the terms of the contract were, nor provided an explanation of the obligations the contract created), with Bianchi-Montana v. Crucci-Silva, 720 F.Supp.2d 159, 164-165 (D.P.R. 2010)(denying motion to dismiss a breach of contract claim initiated by a plaintiff who alleged that he and the defendants entered into an agreement, pursuant to which plaintiff would manage the construction of a restaurant, and that in exchange for fifty thousand dollars' worth of his labor, he would be entitled to (1) twenty percent of the net profit of the restaurant, and (2) a management position at the restaurant with a monthly salary of four thousand dollars).  See also, Ferrera v. Carpionato Corp., 895 F.2d 818, 821-822 (1st Cir. 1990)(affirming directed verdict against plaintiff, because lack of salary term and absence of any stated percentage in project participation and bonus sections of the agreement constituted omission of a material substantive term preventing recovery).

The First Circuit has indicated that some latitude may be appropriate in applying the plausibility standard in certain types of cases.  García-Catalán, 734 F.3d at 104.  Those cases involve instances where, without discovery, plaintiffs could not reasonably be expected to have the information needed to provide more detailed (even if not thorough), factual allegations in support of their claims for relief.

For example, in Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012), the district court dismissed a complaint that alleged that upon information and belief, employees and/or agents of defendant knew that plaintiff had been injured by a rail switch and had sufficient time to take action to prevent further injury on him.  Dismissing the action, that court noted that plaintiff had not alleged to have seen any of defendant's employees in the vicinity of the railroad switch when

he was injured, or that he called anyone for help, or that any specific person saw his peril. The First Circuit reversed, observing that "information and belief" did not mean pure speculation, but rather that the allegations were based on secondhand information that the asserting party believed to be true, when precise recollection could not be expected from a plaintiff badly injured by a switched tract and shortly thereafter hit and dragged under a train.

Similarly, in Peñalbert-Rosa, 631 F.3d at 596, the district court dismissed the complaint for lack of factual allegations that would specifically tie the named defendants with a discriminatory discharge motivated by political affiliation. The First Circuit affirmed dismissal against the named defendants, but reversed dismissal of the complaint "in the interests of justice" to provide plaintiff with the opportunity to amend the complaint to seek relief against a "John Doe" defendant. From the pleadings, the complaint factually asserted that someone had fired plaintiff based on party membership, and a person, such as the plaintiff, unaware of the identity of the individual who wronged her could proceed against a John Doe defendant as a placeholder when good faith investigatory efforts had failed to reveal identity of the correct defendant. From a related perspective, in García-Catalán, 734 F.3d at 104, the First Circuit held the plausibility standard satisfied in part because the complaint was modeled on Form 11 of Appendix to the Federal Rules of Civil Procedure.

Plaintiffs' allegations present no occasion to apply this line of cases. They do not permit the Court to infer that without discovery, plaintiffs could not reasonably be expected to have the information needed to provide an adequate factual predicate for their claim. Nor do they reach the level of specificity contained in the Form for Recovery of a Sum Certain found in the Appendix of Forms to the Federal Rules of Civil Procedure. See, Fed. R. Civ. P. 84 and Form 10.

In <u>Ashcroft</u>, 556 U.S. at 678, and <u>Bell Atlantic</u> v. <u>Twombly</u>, 550 U.S. 544, 556 (2007), the Supreme Court retreated from the historic pleading standard that it had previously established in <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-48 (1957), and replaced it with a standard centered on plausibility.  From this perspective, plaintiffs may have pled facts that are merely consistent with defendant's liability, but those facts stop short of the line between possibility and plausibility.  In context, they have not succeeded in setting forth a plausible claim for relief.  For the same reason, the commissions claim must be dismissed.

**D.  Civil Code**

Plaintiffs allege entitlement to recovery of damages under Articles 1802 and 1803 of Puerto Rico's Civil Code (Docket No. 17 at ¶¶ 77-80).  Article 1802, Puerto Rico's general tort statute, provides in part that a person who "causes damages to another through fault or negligence" shall be liable in damages.  P.R. Laws Ann. tit. 31, § 5141.  Article 1803 applies the principle of *respondeat superior* to Article 1802 claims.  P.R. Laws Ann. tit. 31 § 5142; <u>Pagán-Cólon</u> v. <u>Walgreens of San Patricio, Inc</u>., 697 F.3d 1, 16 (1st Cir. 2012).

Based on the allegations, it is unclear what plaintiffs are claiming for under these articles.  If they seek damages for Santana under the general tort statute for conduct covered by the FMLA, Law 115 or Law 80, they cannot prevail.  As the Puerto Rico Supreme Court and courts in this District have held, to the extent that a specific labor or employment law covers the conduct for which a plaintiff seeks damages, he is barred from using the same conduct to also bring a claim under Article 1802.[6] <u>Pagán-Colón</u> v. <u>Walgreens of San Patricio, Inc</u>., 2014 T.S.P.R. 20, at *4-*5;

_____

[6] In <u>Muñoz</u> v. <u>Sociedad Española</u>, 671 F.3d 49, 59-60 (1st Cir. 2012), the First Circuit noted but declined to discuss the issue because defendant had waived it under Fed. R. Civ. P. 50(b), and in the Court's view, it did not qualify for plain error review.

Nieves-Pérez v. Doctors' Center, 2011 WL 1843057, at *7 (D.P.R. May 16, 2011); Rosario v. McConnell Valdes, 2008 WL 509204, *2 (D.P.R. Feb. 21, 2008).  The principle underlying this interpretation reflects the historical development of wrongful dismissal actions in Puerto Rico.

Originally, most employees hired for undefined term had no legal protection from wrongful discharge.  See Jorge L. Capó-Matos, *Employment at Will: A State-by-State Survey, Puerto Rico*, 932-936 (BNA Books, Arlington, VA. 2011).  Article 302 of the Spanish Commerce Code, which continued in effect after Spain ceded its sovereignty over Puerto Rico in 1898 as part of the peace treaty to end the Spanish American War, provided that in case of employment relationships not subject to a fixed term, either party was free to terminate the relationship giving a month's notice. Nevertheless, the merchant could provide payment of a month's salary in lieu of notice.  This provision did not, however, extend to employees not subject to the Commerce Code.

This regime began to change in 1930, with the enactment of Law 43 of April 28, 1930, codified as Articles 1478 and 1479 of the Civil Code.  Together, these articles provided that (1) any employee of an industry or other lucrative business, (2) whose services were retained without a definite term, and (3) was discharged without just cause and a 15-day prior notice, would be entitled to a payment equal to the salaries she would have earned during the regular pay period of not less than one (1) week nor more than one (1) month.  Law No. 84 of May 12, 1943 amended Article 1478 of the Civil Code to eliminate the 15-day advance notice requirement previously established by Law No. 43.

In turn, Law No. 50 of April 20, 1949, repealed Articles 1478 and 1479 of the Civil Code, and established a separate wrongful discharge statute covering private sector employees hired for undefined term, including those subject to the Commerce Code.  Additionally, it granted statutorily

covered employees discharged without just cause entitlement to one (1) month's pay.  Law No. 80 of May 30, 1976 replaced Law No. 50 to, among other things, increase the amount of indemnity to be paid in the event of a dismissal without just cause.[7] Like its statutory predecessors, it provides a remedy for unjust dismissal where the Civil Code provides none.  For that reason, its remedial provisions have been considered exclusive to redress discharges without just cause of employees hired for an indefinite term.  See, Weatherly v. International Paper Co., 648 F.Supp. 872, 877-878 (D.P.R. 1986) and cases cited therein.

To the extent labor legislation has created new causes of action to address previously uncovered aspects of employment relationships as in the case of discrimination and retaliation, it has been subjected to the same remedial exclusivity principle barring redress under general statutes such as Article 1802 of the Civil Code.  Therefore, consistent with Nieves, 2011 WL 1843057, *7; Rosario, 2008 WL 509204, *2; and Pagán-Colón, 2014 T.S.P.R. 20, *4-*5, the remedies available to the employee for violation of labor statutes will be the remedies established in the statute prohibiting the conduct complained of.  Since the pleadings do not reflect tortious conduct distinct from that covered by the specific labor laws Santana has invoked, he cannot bring an action for damages under Articles 1802 or 1803 of the Civil Code.

In contrast to employees, who in general are limited to recover remedies included in labor statutes, the Puerto Rico Supreme Court permits relatives of a person who has been the victim of employment discrimination to bring emotional damage claims under Article 1802 to be

---

[7]  At present, it consists of the following amounts: (1) during the first 5 years of the employee's service, 2 months' pay plus 1 week's pay for each completed year of service; (2) from 5 but less than 15 years of service, 3 months' pay plus 2 weeks of pay for each completed year of service; and (3) 15 or more years of service, 6 months' pay plus 3 weeks' pay for each completed year of service.  P. R. Laws Ann. Tit. 29 § 185(a).  See, Soto-Lebrón v. Federal Express, 538 F.3d 45, 55 (1st Cir. 2008)(describing the Law No. 80 compensation formula).

compensated for harm to them resulting from the discrimination. Pagán-Colón, 697 F.3d at 16. Such claims are contingent upon, and cannot survive independently of the principal plaintiff's underlying employment discrimination or retaliation claim. If the principal plaintiff's claim fails, so too does the relative's derivative claim. Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12-13 (1st Cir. 2007); Marcano Rivera v. Pueblo Intern., Inc., 232 F.3d 245, 258 n. 7 (1st Cir. 2000); Marrero v. Schindler Elevator, Corp., 494 F.Supp.2d 102, 112 (D.P.R. 2007). Such is the case here.

Considering that Santana's claims under Law 115 and FMLA do not withstand dismissal, his spouse lacks a derivative claim under them. As for the FMLA, the Puerto Rico Supreme Court has additionally held that the statute may not be used as a predicate for derivative emotional damages claims for the employee's spouse. Pagán-Colón, 2014 T.S.P.R. 20, *8. Lastly, even though, as discussed below, the Law 80 claim survives, it does not provide a remedy in damages. Pagán-Colón, 697 F.3d at p. 16 n. 10 (1st Cir. 2012); Soto-Lebrón, 538 F.3d at 55; Weatherly, 648 F.Supp. at 877-878. In these circumstances, no factual allegations plausibly support plaintiffs' claims under Articles 1802 and 1803 of the Puerto Rico Civil Code. Consequently, those claims must be dismissed.

### E. Law No. 80

Plaintiffs allege that defendant violated Law No. 80 (Docket No. 17 at ¶¶ 70-71). They allege that (1) when Santana was dismissed, the employer informed him that he was being discharged due to a company downsizing of personnel; and (2) that the downsizing is pretextual, because other employees were recruited and earned a higher salary than Santana. Id. at ¶ 54.

As relevant, Law No. 80 (1) makes certain employers liable for the dismissal without just cause of employees hired for undefined term; (2) contains a general definition of just cause; (3) provides guidance on the application of this concept to various scenarios related to employee misconduct and performance, as well as to reductions-in-force and shutdowns; and (4) imposes on the employer the burden to plead and establish just cause.  See, P.R. Laws Ann. tit. 29 §§ 185b, 185k.

The general definition of just cause indicates what just cause is not, providing that a discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment is not to be considered as a discharge for good cause.  See, P.R. Laws Ann. tit. 29 § 185b.  To restrict and guide the interpretation of this broadly formulated definition, the statute provides examples of just cause, among which it includes:

1. Full, temporary, or partial closing of the operations of the establishment, provided that in those cases in which the company has more than one office, factory, branch or plant, the full, temporary or partial closing of operation of any of these establishments shall constitute just cause for discharge;

2. Technological or reorganizational changes; changes in the style, design, or in the nature of the product made or handled by the establishment; and changes in the services rendered to the public; and

3. Reductions in employment made necessary by a reduction of anticipated or prevailing volume of production, sales, or profits at the time of the discharge.

In the event employees are dismissed on any of these grounds, to avoid liability the employer must retain with preference employees with greater company-wide seniority in the occupational classification within which the downsizing is to take place, provided there are positions vacant or filled by employees of less job seniority in the same occupational classification.

See, P.R. Laws Ann. tit. 29 § 185c.[8]

A similar preference rule applies if the employer hires personnel in the affected occupational classification within six (6) months of the discharge.  Thus, the more senior employees should be recalled with preference over less senior employees, and both type of employees given preference over new employees should the employer decide to hire personnel to fill positions in that occupational classification.  See, P.R. Laws Ann. tit. 29 § 185b.

Defendant contends dismissal is required because according to plaintiffs, Santana was dismissed in a downsizing they have characterized as pretextual, insomuch as employees were hired after Santana's discharge.  From its perspective, plaintiffs needed to plead facts sufficient to infer that defendant violated Law 80's preferential hiring rule.  More specifically, it points out that plaintiffs failed to mention (1) whether other people were hired within the same occupational classification of Santana, (2) whether such hiring occurred within the six (6) months following Santana's termination, and if so, (3) whether defendant did not observe the seniority requirements set forth in the statute, that is, (4) whether defendant kept employees in Santana's former occupational classification that had been with the company less time, or kept employees that were less productive than Santana (Docket No. 18 at p. 16-17).

At the pleading stage, the employee's burden under Law 80 is to allege unjustified dismissal.  Hoyos v. Telecorp Communications, Inc., 488 F.3d 1, 6 (1st Cir. 2007); Hoyos v. Telecorp Communications, Inc., 405 F.Supp.2d 199, 205-206 (D.P.R. 2010); Álvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998).  No more is needed.  In response,

---

[8] If there is a clear and conclusive difference in favor of the efficiency or capacity of the workers compared, these efficiency or capacity factors shall prevail in the determination of which of the employees compared should be retained.  See, P.R. Laws Ann. tit. 29 § 185c.

the employer must answer, pleading the facts that led to the dismissal in compliance with the criteria recognized as just cause for the discharge. See, P.R. Laws Ann. tit. 29 § 185k.

That plaintiffs opted to characterize the downsizing as pretextual does not modify their initial burden. For the same reason, it does not impose upon them the obligation to include more allegations than those minimally required to initiate an action under Law 80. Defendant's motion to dismiss must be denied on this basis. Yet by the allegations, the Law 80 claim carries a potential liability of $7,792 (Docket No. 17 at ¶ 71). Jurisdiction predicated on diversity of citizenship requires the amount in controversy to exceed $75,000. See, 28 U.S.C. § 1332(a). On this ground, the Law 80 claim must be dismissed, albeit without prejudice.

### III.    CONCLUSION

Motions under Fed. R. Civ. P. 12(b)(6) test the sufficiency of pleadings in light of their factual content and substantive law. Careful evaluation of plaintiffs' allegations leads the Court to conclude dismissal is appropriate. Except for the Law 80 claim, the allegations lack the minimum factual content required to support a plausible entitlement to relief. In turn, the Law 80 claim does not reach the jurisdictional amount needed to maintain jurisdiction under 28 U.S.C. § 1332(a).

In view of the foregoing, the motion to dismiss is GRANTED IN PART AND DENIED IN PART. Plaintiffs' claims under the FMLA, Law No. 115, and the Puerto Rico Civil Code are dismissed with prejudice. The claim under Law No. 80 is dismissed without prejudice. Judgment shall be entered accordingly.

**SO ORDERED**.

In San Juan, Puerto Rico, this 30th day of September, 2014.

S/Pedro A. Delgado-Hernández
PEDRO A. DELGADO HERNANDEZ
U.S. DISTRICT JUDGE